## UNITED STATES DISTRICT COURT
## DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, on behalf of itself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREEN MOUNTAIN COFFEE ROASTERS, INC., ROBERT P. STILLER, LAWRENCE J. BLANFORD, FRANCES G. RATHKE, BARBARA D. CARLINI , WILLIAM D. DAVIS, JULES A. DEL VECCHIO, MICHAEL J. MARDY, HINDA MILLER, DAVID MORAN, MERRILL LYNCH, PIERCE, FENNER & SMITH INC., SUNTRUST ROBINSON HUMPHREY, INC., WILLIAM BLAIR & COMPANY, L.L.C., CANACCORD GENUITY INC., JANNEY MONTGOMERY SCOTT LLC, PIPER JAFFRAY & CO., RBC CAPITAL MARKETS, LLC, WELLS FARGO SECURITIES, LLC, RABO SECURITIES USA, INC., AND SANTANDER INVESTMENT SECURITIES INC.,<br><br>Defendants. | : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : : | No. 2:11-cv-00289-WKS |

### MEMORANDUM IN SUPPORT OF MOTION OF MIDWEST RETIREMENT FUNDS FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL

Proposed lead plaintiff, the City of Omaha Police and Fire Retirement System and Local No. 8 IBEW Retirement Plan and Trust (collectively, the "Midwest Retirement Funds"), respectfully submits this memorandum of law in support of its motion for: (1) appointment as lead plaintiff in the above-referenced action pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §78u-4, *et seq.*; and (2) approval of its selection of Scott+Scott LLP ("Scott+Scott") as lead counsel for the class and McVeigh Skiff as liaison counsel for the class.

## I.      INTRODUCTION

This is a securities class action brought on behalf of purchasers of Green Mountain Coffee Roasters, Inc. ("Green Mountain" or the "Company") securities from February 2, 2011 through and including November 9, 2011 (the "Class Period"), against Green Mountain and certain of its officers and/or directors for violation of the Securities Exchange Act of 1934 (the "Exchange Act") and Sections 11, 12 and 15 of the Securities Act of 1933 ("Securities Act").

The PSLRA establishes a three-step procedure for the selection of lead plaintiffs to oversee class actions brought under the federal securities laws.[1]  First, within 20 days after the date on which a securities fraud class action is filed, the initial plaintiff is required to publish a notice advising potential plaintiff class members of the pendency of the action, the claims, the purported class period, and that any member of the class may file a motion with the Court to serve as lead plaintiff no later than 60 days from the publication of that original notice.  15 U.S.C. §78u-4(a)(3)(A)(i).  Here, notice was first published on November 29, 2011.

Second, the Court is to consider any motions brought by class members seeking to be appointed as lead plaintiffs no later than 90 days after publication of the notice. 15 U.S.C. §78u-4(a)(3)(B)(i).  Under this provision of the PSLRA, the Court shall appoint

---

[1]      As the lead plaintiff appointment provisions of the Exchange Act and the Securities Act are identical, all references herein are to the Exchange Act lead plaintiff provisions only.

the "most adequate plaintiff" to serve as lead plaintiff for the class. *Id.* The PSLRA provides that the Court shall presume the lead plaintiff to be the person (or group of persons) who: (1) has either filed a complaint or moved for lead plaintiff in response to a notice; (2) "has the largest financial interest in the relief sought;" and (3) satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). A lead plaintiff is not required to have standing to assert every possible claim. *Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2d Cir. 2004).

Finally, after the presumptive lead plaintiff has been identified, other class members have an opportunity to rebut the presumptive lead plaintiff's showing that it satisfies Rule 23's typicality and adequacy requirements. 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc).

Here, the Midwest Retirement Funds should be appointed as lead plaintiff because it: (1) timely filed this Motion; (2) believes it has the largest financial interest in the relief sought by the class; and (3) will fairly and adequately represent the interests of the class. *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I). In addition, Midwest Retirement Funds' selection of Scott+Scott as lead counsel and McVeigh Skiff as liaison counsel for the class should be approved. *See* 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.     FACTUAL BACKGROUND

Based in Waterbury, Vermont, Green Mountain engages in the specialty coffee and coffeemaker businesses. ¶¶1, 16.[2] According to the Complaint, the Company had purportedly achieved significant growth in recent years, driven by sales from its popular Keurig single-cup brewing system, which uses "K-Cup" portion packs to brew single servings of coffee and other beverages. ¶1. Green Mountain distributes its Keurig and K-Cup products primarily through its "At-Home" distribution channel, which relies almost

---

[2]     All ¶ and ¶¶ are references to the class action complaint filed November 29, 2011 (the "Complaint"), ECF No. 1.

2

exclusively on Green Mountain's key fulfillment vendor, M.Block & Sons ("MBlock"). *Id.*

The Complaint charges, however, that during the Class Period, Green Mountain executives systematically manipulated and strategically managed the Company's revenues by using MBlock as a captive warehouse to harbor excessively manufactured, expired, or otherwise unsold product. ¶5. Plaintiff alleges the scheme allowed Green Mountain to materially overstate Company revenues based on falsified sales orders and inventory shipments for hundreds of millions of dollars in K-Cup and Keurig brewer products. *Id.* The artificial revenues associated with these transactions were booked, causing material overstatements in the Company's financial statements. *Id.* In addition, the Complaint alleges, Green Mountain fraudulently overstated the Company's assets in proportion to its revenues by carrying the proceeds of the false sales transactions as assets on the Company's balance sheet. *Id.*

The Complaint alleges this scheme was eventually revealed to investors in a series of partial disclosures. ¶6. First, at an October 17, 2011 investing conference, David Einhorn, a prominent Green Mountain investor, presented an in-depth analysis of the Company's financial reporting, which included interviews with former Green Mountain and MBlock employees. ¶95. The Einhorn presentation indicated that, among other fraudulent activities, Green Mountain was "parking" its inventory at MBlock and booking the shipments as sales. ¶96. On this information, the Complaint alleges the price of Green Mountain shares fell approximately 10% on unusually heavy trading volume. ¶99. Then, on October 19, 2011, the *Wall Street Journal* published an article that more widely distributed Einhorn's findings, which caused the price of Green Mountain's stock to decline an additional 15%. ¶100. Finally, on November 9, 2011, Green Mountain announced missed sales estimates and staggeringly increased inventory levels. ¶101. On this news, the price of the Company's shares allegedly plummeted from $67.02 to $40.89, or 40%, again on unusually heavy trading volume. ¶105.

### III.    ARGUMENT

#### A.    The Midwest Retirement Funds Should Be Appointed as Lead Plaintiff

The Midwest Retirement Funds meets each of the requirements of 15 U.S.C. §78u-4(a)(3) and should therefore be appointed as lead plaintiff.

#### 1.    The Midwest Retirement Funds' Motion Is Timely

The plaintiff who files an action must publish a notice to the class, within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff.  15 U.S.C. §78u-4(a)(3)(A)(i).  On November 29, 2011, a notice of pendency of the action was published via *Marketwire.  See* Declaration of William B. Skiff ("Skiff Decl."), Ex. A.  Because notice was published on *Marketwire* the same day this action was filed, notice was timely. Class members who file a complaint or move pursuant to §21D(a)(3)(ii) of the Exchange Act are eligible to be appointed as lead plaintiffs, so long as their motion is timely.  15 U.S.C. §78u-4(a)(3)(B)(i).  Here, Midwest Retirement Funds' motion is filed within 60 days from the publication of notice and, as such, is timely.  15 U.S.C. §78u-4(a)(3)(A)(i)(II).

#### 2.    The Midwest Retirement Funds Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, Midwest Retirement Funds lost in excess of $1,793,285 due to defendants' misconduct. *See* Skiff Decl., Ex. B. Upon information and belief, Midwest Retirement Funds believes that it has the largest financial interest in the relief sought by a lead plaintiff movant in this action.  *See* 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(bb).

#### 3.    The Midwest Retirement Funds Otherwise Satisfies Rule 23 of the Federal Rules of Civil Procedure

15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc) provides that, at the outset of the litigation, lead plaintiffs must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  With respect to the qualifications of the class representative,

Rule 23(a) requires generally that the plaintiff's claims be typical of the claims of the class and that the representative fairly and adequately protect the interests of the class. As detailed below, the Midwest Retirement Funds satisfies the typicality and adequacy requirements of Rule 23(a) and is qualified to be appointed as lead plaintiff here.

The typicality requirement of Rule 23(a)(3) is met if "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Plumbers, Pipefitters & MES Local Union No. 392 Pension Fund v. Fairfax Fin. Holdings Ltd.*, No. 11 Civ. 5097, 2011 WL 4831209, at *2 (S.D.N.Y. Oct. 12, 2011) (quoting *In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)). "A lead plaintiff's claims need not be identical to the claims of the class to satisfy the typicality requirement." *Id.* (internal citations and quotation marks omitted).

Here, there is a well-defined community of interest in the questions of law and fact involved in this case. The claims asserted by the Midwest Retirement Funds, which acquired Green Mountain securities during the Class Period, are typical of the claims of the members of the proposed class. Because the claims asserted by the Midwest Retirement Funds are based on the same legal theories and arise "'from the same event or practice or course of conduct that gives rise to the claims of other class members,'" typicality is satisfied. *See* Newberg, *et al.*, *Newberg on Class Actions*, §3:13 (4th ed. 2002).

The adequacy of representation requirement of Rule 23(a)(4) is satisfied where it is established that a representative party, "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). In order to satisfy this requirement, a prospective lead plaintiff must show that he, she, or it does not have any conflicts of interest with other class members and that the plaintiff and counsel will vigorously prosecute the case. *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 170 (2d Cir. 2001) (quoting Newberg, *et al.*, *Newberg on Class Actions*, §3.22, at 3–126 (3d ed.1992)).

The Midwest Retirement Funds will more than adequately represent and protect the interests of the class. First, its interests are clearly aligned with the members of the proposed class and there is no evidence of any antagonism between its interests and the interests of the proposed class members. Second, as detailed above, the Midwest Retirement Funds shares substantially similar questions of law and fact with the members of the proposed class and its claims are typical of the members of the class. Third, its members have amply demonstrated that they will adequately serve as class representatives by signing sworn Certifications affirming their willingness to serve as, and assume the responsibilities of, class representatives. *See* Skiff Decl., Ex. C.

The Midwest Retirement Funds has also submitted a supplemental declaration demonstrating that it is a small, cohesive group of two retirement funds determined to prosecute this case together efficiently and effectively. *See* Skiff Decl., Ex. D. The members of the Midwest Retirement Funds have both worked with Scott+Scott since before this action was commenced and will continue consulting with Scott+Scott and each other on a regular basis to direct the course of this litigation with the advice of counsel. *Id.* They have agreed upon a decision-making structure that advances the interests of the Class. *Id.* They are also both sophisticated investors who understand their obligations as lead plaintiff and are experienced at overseeing counsel in the course of managing their respective funds' assets. *Id.*

Finally, the Midwest Retirement Funds has taken significant steps that will promote the protection of interests of the class: specifically, it carefully evaluated the litigation and is selecting proposed lead counsel who are qualified, experienced and able to conduct this complex litigation in a professional manner. Clearly, the Midwest Retirement Funds satisfies the requirements of Rule 23 and all of the PSLRA's prerequisites for appointment as lead plaintiff in this action.

6

### 3. Congress Expressly Intended that Institutional Investors Like the Midwest Retirement Funds Would Be Appointed as Lead Plaintiffs in Enacting the PSLRA

When enacting the PSLRA in 1995, Congress reasoned that increasing the role of larger investors, like the Midwest Retirement Funds' members, which typically have a larger financial stake in the outcome of the litigation and are governed by experienced fiduciaries, would be beneficial because investors with large financial stakes are more apt to effectively manage complex securities class action litigation. *See* Conference Report on the Private Securities Litigation Reform Act of 1995, H.R. Conf. Rep. 104-369, at 29 (104th Cong., 1st Sess. 1995) ("[C]lass members with large amounts at stake will represent the interests of the plaintiff class more effectively than class members with small amounts at stake."); *see also In re Adelphia Commc'ns Corp. Sec. and Deriv. Litig.*, No. 03 MD 1529, 2005 WL 2126157, at *2 (S.D.N.Y. Sept. 1, 2005).

Here, the Midwest Retirement Funds, comprised of two institutional investors possessing significant financial stakes in this litigation, is precisely the type of lead plaintiff envisioned by Congress and, therefore, should be appointed. As experienced institutional investors charged with managing tens of millions of dollars of retirement savings, they each share a mutual interest in both deterring fraud in the capital markets in which they invest, and in directing the vigorous prosecution of this particular class action to obtain the largest recovery possible for Green Mountain's defrauded investors. *See* Skiff Decl. Ex. D.

### B. The Court Should Approve the Midwest Retirement Funds' Selection of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §78u-4(a)(3)(B)(v). As such, this Court should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa). Here, the Midwest Retirement Funds has selected the law firm of Scott+Scott to represent the class.

7

Scott+Scott is a firm with substantial experience in the prosecution of shareholder and securities class actions and possesses the resources necessary to efficiently conduct this litigation. *See* Skiff Decl., Ex. E. Specifically, Scott+Scott has served as lead or co-lead counsel in many high-profile class actions, recovering hundreds of millions of dollars for class members and others harmed by corporate fraud and mismanagement.[3] Accordingly, the Court should approve the Midwest Retirement Funds' selection of Scott+Scott as lead counsel.

## III.    CONCLUSION

For the foregoing reasons, the Midwest Retirement Funds respectfully requests that the Court appoint the Funds as Lead Plaintiff in the Action pursuant to §21D(a)(3)(ii) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §78u-4, and approve Midwest Retirement Funds' selection of the law firm of Scott+Scott to serve as lead counsel and of William B. Skiff to serve as liaison counsel.

---

[3]    Some recoveries of note for Scott+Scott include: a settlement of $70 million for a class of purchasers of Credit Suisse stock in *Cornwell v. Credit Suisse Group, et al.*, No. 08-cv-03758 (S.D.N.Y.); settlement of $80 million for a class of purchasers of Priceline stock in *In re Priceline.com Inc. Sec. Litig.*, No. 00-01844 (D. Conn.); and a $122 million settlement for purchasers of Mattel stock in *Thurber v. Mattel, Inc.*, No. 99-10368 (C.D. Cal.). Additional recent securities settlements obtained by Scott+Scott, acting as lead or co-lead counsel, include: *In re Emulex Corp. Sec. Litig.*, No. 01-00219 (C.D. Cal.) (settlement of $39 million); *In re Sprint Sec. Litig.*, No. 00-230077 (Cir. Ct. Jackson County, Mo.) (settlement of $50 million); *In re Northwestern Corp. Sec. Litig.*, No. 03-04049 (D.S.D.) (settlement of $61 million); *Irvine v. Imclone Systems, Inc.*, No. 02-00109 (S.D.N.Y.) (settlement of $75 million); *Schnall v. Annuity and Life Re (Holdings) Ltd.*, No. 02-02133 (D. Conn.) (settlement of $27 million); *In re Qwest Communications International, Inc.*, No. 02-08188 (Colorado District Court, City and County of Denver) (shareholder derivative settlement including significant corporate governance reforms and $25 million for the company); and *In re Lattice Semiconductor Corp. Deriv. Litig.*, No. 043327 (Cir. Ct. Oregon) (significant monetary recovery and business reforms, including termination of the then-CEO, termination and adoption of significant changes to the company's auditing, insider trading, executive compensation and other internal practices).

DATED: January 30, 2012

Respectfully submitted,
MCVEIGH SKIFF

/s/ William B. Skiff
William B. Skiff
30 Elmwood Avenue
Burlington, VT 05401
Telephone: (802) 660-2466
Fax: (802) 660-2477

*Liaison Counsel for Proposed Lead Plaintiff*

SCOTT+SCOTT LLP
David R. Scott
156 South Main Street
P.O. Box 192
Colchester, CT  06415
Telephone:  (860) 537-5537
Fax:  (860) 537-4432

- and –

Mary K. Blasy
Hal D. Cunningham
707 Broadway, Suite 1000
San Diego, CA 92101
Telephone:  (619) 233-4565
Fax:  (213) 233-0508

*Counsel for Proposed Lead Plaintiff*

9