**UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF VERMONT**

LOUISIANA MUNICIPAL POLICE     :
EMPLOYEES' RETIREMENT SYSTEM,  :
on behalf of itself and all    :
others similarly situated,     :
                               :
              Plaintiff,       :
                               :   Case no. 2:11-cv-289
       v.                      :
                               :
GREEN MOUNTAIN COFFEE          :
ROASTERS, INC., et al.,        :
                               :
              Defendants.      :

<u>Memorandum Opinion & Order</u>
<u>Motions to Appoint Lead Plaintiff & Lead Counsel</u>

Louisiana Municipal Police Employees' Retirement System ("LAMPERS") filed this putative securities fraud class action against Green Mountain Coffee Roasters, Inc. ("GMCR" or the "Company"), and nineteen of GMCR's officers, directors, and underwriters.  Class Action Compl., ECF No. 1.  The complaint alleges Defendants exaggerated GMCR's earnings by booking shipments of excess product to a fulfillment vendor falsely as sales.  GMCR insiders then turned that information to their profit, the complaint alleges, by selling stock while the Company's shares were overvalued.  The proposed class seeks to hold Defendants liable under Sections 11, 12, and 15 of the Securities Act of 1933 (the "Securities Act"), 15 U.S.C. §§ 77k, 77l, 77o, and Sections 10(b) and 20(a) of the Securities and

Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b), 78t(a), for the losses its members suffered when GMCR's stock price fell on word of the Company's earnings manipulation.

Pending are three competing motions to appoint lead plaintiff and lead counsel.  ECF Nos. 6-8.  The two leading contenders for lead plaintiff are a collection of five large investors, named the Global Institutional Investors Group ("GIIG"), and a pairing of two pension funds, called the Midwest Retirement Funds ("Midwest").  For the reasons detailed below, the Court **grants** GIIG's motion for appointment as lead plaintiff and approves its selection of lead and liaison counsel.  It **denies** the remaining parties' lead plaintiff motions, and **denies as moot** Midwest's motion to strike and for leave to file a sur-reply, ECF No. 26.

### Background

The Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3), supplies the standard for appointing lead plaintiff and lead counsel in securities fraud class actions.[1]  As permitted by the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(i), several members of the class filed motions

---

[1]     This opinion cites only to the provisions that apply specifically to Exchange Act claims.  Those applicable to the Securities Act suits are identical but are codified separately at 15 U.S.C. § 77z-1(a)(3).

seeking appointment as lead plaintiff with their choice of lead counsel.  GIIG and Midwest remain to compete for that title.[2] GIIG is a team of five institutional investors: LAMPERS, Sjunde AP-Fonden ("AP7"), Board of Trustees of the City of Fort Lauderdale General Employees' Retirement System, Employees' Retirement System of the Government of the Virgin Islands, and Public Employees' Retirement System of Mississippi.  It is represented by a group of three lead law firms, Kessler Topaz Meltzer & Check LLP, Bernstein Litowitz Berger & Grossmann LLP, and Barrack, Rodos & Bacine, and one Vermont liaison counsel, Lynn, Lynn & Blackman, P.C.  Midwest is comprised of the City of Omaha Police and Fire Retirement System and Local No. 8 IBEW Retirement Plan and Trust.  It is represented by one lead firm, Scott+Scott LLP, and one Vermont liaison counsel, McVeigh-Skiff. Midwest also filed a motion to strike expert declarations relating to Swedish law accompanying GIIG's reply brief and for leave to file a sur-reply.

---

[2]    There were initially two other movants, the Steelworkers Pension Trust and Genesee County Employees' Retirement System.  ECF Nos. 4, 7.  Steelworkers withdrew its motion, and cast its support for GIIG.  ECF No. 13.  Genesee did not withdraw, but filed a short response brief conceding it had the smallest claimed losses of the movants.  ECF No. 9.

## Discussion

In enacting the PSLRA lead plaintiff provisions, Congress intended to favor institutional investors, who it determined could best advocate on behalf of the class and exercise control over class counsel. *See In re Party City Sec. Litig.*, 189 F.R.D. 91, 103-04 (D. N.J. 1999). The PSLRA imposes a two-step selection process. *Sgalambo v. McKenzie*, 268 F.R.D. 170, 173 (S.D.N.Y. 2010); *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii). First, the Court determines which movant is presumptively "'most adequate.'" *Sgalambo*, 268 F.R.D. at 173; 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). To benefit from that presumption, the plaintiff must first, "in the determination of the court, ha[ve] the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb); *Sgalambo*, 268 F.R.D. at 173. It must also "'otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure,'" by making a preliminary showing that it meets Rule 23(a)'s typicality and adequacy requirements. *Sgalambo*, 268 F.R.D. at 173 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc)).

At step two, the Court must evaluate whether any competing party has rebutted the presumption with "proof" that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class," or "is subject to unique

defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *Sgalambo*, 268 F.R.D. at 174. If the plaintiff with the largest financial interest fails at any step, the Court should begin the process anew with the next largest stakeholder. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002).

Also under the PSLRA, "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). The statute creates a presumption in favor of the lead plaintiff's proper choice of counsel but still requires the Court "to decline to appoint the candidate proposed by lead plaintiff when warranted to protect the interests of the class." *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 134 (S.D.N.Y. 2011).

The Court begins its analysis in this case with the size of the parties' financial interests in the litigation. That review is guided by the so-called *Lax* factors: "'(1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended during the class period; and (4) the approximate losses suffered.'" *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 404 (S.D.N.Y. 2004)(quoting *Lax v. First Merchs. Acceptance Corp.*, Nos. 97

Civ. 2715 et al., 1997 WL 461036, at *5 (N.D. Ill. Aug. 11, 1997)).  Courts place most weight on factor four, the size of the parties' losses.  *Foley*, 272 F.R.D. at 128.  GIIG has a superior claim to Midwest on all four *Lax* metrics.  Significantly, it suffered a reported $3.9 MM in losses compared to Midwest's $1.8 MM.  Thus, GIIG has the largest financial stake in the litigation.

GIIG also makes a sufficient initial showing on Rule 23(a)'s typicality and adequacy prongs.  "Typicality is established where each class member's claim 'arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'"  *Janbay v. Can. Solar, Inc.*, 272 F.R.D. 112, 120 (S.D.N.Y. 2010) (quoting *In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 291 (2d Cir. 1992)).  There is no question that GIIG's claims are typical of the class's.  In fact, one of its members drafted the sole complaint.  Adequacy requires that

> (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy.

*Foley*, 272 F.R.D. at 131.  There is no dispute as to the qualifications of the lead firms representing GIIG, which have lengthy track records in securities fraud litigation.  *See*

GIIG's Mot. to Appoint Lead Pl. Exs. E-G, ECF Nos. 8-7 to -9. There is no apparent conflict between GIIG's litigation position and the rest of the class's, and it has a large financial stake in the outcome of the case.  Having satisfied the requirements of step one of the PSLRA analysis, GIIG is entitled to presumptive lead plaintiff status.

To rebut that presumption, Midwest first asserts GIIG member AP7's standing is in doubt.  It argues that AP7's standing defect would open GIIG to unique defenses and hinder prosecution of the class's case.  AP7 is a Swedish government entity that oversees several funds in which Swedish workers may invest some of their payroll pension taxes.  Midwest's concern arises because of *W.R. Huff Asset Management Co. v. Deloitte & Touche LLP*, in which the Second Circuit denied standing to an investment advisor to file a securities fraud action when the advisor sued on behalf of its clients under a power of attorney. 549 F.3d 100 (2d Cir. 2008).  Two recent district court decisions have relied on *Huff* to deny lead plaintiff status to AP7 and a similar entity.  *Pipefitters Local No. 636 Defined Benefit Plan v. Bank of Am. Corp.,* 275 F.R.D. 187, 191 (S.D.N.Y. 2011) ("At this stage, however, it is sufficient to note that arguments could be raised regarding AP7's third party standing, which subjects it to a unique defense and may prejudice the

class.  Without AP7, the Funds Group no longer has the largest financial interest in this action."); *Baydale v. Am. Express Co.,* No. 09 Civ. 3016 (WHP), 2009 WL 2603140, at *3 (S.D.N.Y. Aug. 14, 2009) (denying lead plaintiff status to a Swedish money manager, moving on its own, since "LFAB's status raises complex and novel issues of law which would require extensive factual and foreign legal analysis.  Such a diversion would be a needless litigation sideshow.").

Unlike in those cases, however, GIIG would still surpass Midwest in each of the *Lax* categories even without AP7, with $2 MM in total losses.  As a result, questions concerning AP7's standing do not impact GIIG's qualifications to lead the class. No party has raised issue with any other GIIG member's standing to bring the class's claims.  The Court finds Midwest's standing argument unpersuasive in the present context.

Midwest also urges that GIIG's structure, with five individual plaintiffs and three lead law firms, is too unwieldy to efficiently represent the class's interest.  Courts have expressed concern about multi-party lead plaintiff groups.  *See, e.g.,* *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 337 (S.D.N.Y. 2005).  Nonetheless, such groups have become accepted features of post-PSLRA securities litigation.  *See Richman v. Goldman Sachs Grp., Inc.*, 274 F.R.D. 473, 478 (S.D.N.Y. 2011).

Here, the GIIG plaintiffs are institutional investors with significant securities fraud litigation experience. They have also drafted a Joint Declaration, indicating that they, not their lawyers, decided to collaborate and that they will work as a team on this case. Joint Decl., GIIG's Mot. to Appoint Lead Pl. Ex. D, ECF No. 8-6; *see Varghese v. China Shenghuo Pharm. Holdings, Inc.*, 589 F. Supp. 2d 388, 392 (S.D.N.Y. 2008). While not an extensive showing, that agreement is sufficient to assure the Court that the GIIG plaintiffs will effectively manage the litigation. *See In re Bank of Am. Corp. Sec., Derivative & ERISA Litig.*, 258 F.R.D. 260, 270 (S.D.N.Y. 2009).

Courts have also looked skeptically at proposed co-lead counsel arrangements. *See, e.g.*, *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 2000). Nonetheless, co-lead counsel may be approved where the parties show that "there will be 'no duplication of attorneys' services, and the use of co-lead counsel [will] not in any way increase attorneys' fees and expenses.'" *Richman*, 274 F.R.D. at 479 (quoting *Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 404 (S.D.N.Y. 2004)). The lead plaintiff must demonstrate it "will be able to withstand any limitation on, or usurpation of, control, and effectively supervise the law firms acting as lead counsel." *In re Party City Sec. Litig.*, 189 F.R.D. at 115. GIIG represents its

9

attorneys have drafted a Joint Prosecution Agreement concerning allocation of responsibility among the firms and for resolving any disputes that may arise.  The Court does not find appointing three lead law firms unreasonable in this case, given the breadth of the claims, arising under both the Securities Act and Exchange Act, and the large number of defendants they implicate. Since none of the lead firms has a Vermont office, it is also reasonable to appoint liaison counsel.  *See Foley*, 272 F.R.D. at 134.

Lastly, none of the parties addressed the issue of the GIIG plaintiffs' service as lead plaintiffs in other cases.  15 U.S.C. § 78u-4(a)(3)(vi)(providing that "[e]xcept as the Court may otherwise permit, consistent with the purposes of this section," lead plaintiffs cannot serve in that capacity in more than five other federal securities class actions during any three-year period.)  It appears from their certifications that the five GIIG members have, combined, served as representative plaintiffs in thirteen such actions filed within the last three years.  *See* Certifications Pursuant to the Fed. Sec. Laws, GIIG's Mot. to Appoint Lead Pl. Ex. B, ECF No. 8-4.  However, courts routinely grant exceptions to large institutional investors, finding that the five suit limit was intended mainly to deter private individuals from becoming professional

plaintiffs.  *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 466-67 & n.2 (S.D.N.Y. 2009).  The Court grants an exception to GIIG, since its members are all major institutional investors with significant securities litigation experience. *See id.*  GIIG has made the requisite initial showing under the PSLRA to qualify as a presumptive lead plaintiff, and Midwest has not successfully rebutted GIIG's claim.  As such, the Court appoints GIIG lead plaintiff and approves its choice of counsel.

## Conclusion

Based on the foregoing, the Court hereby grants GIIG's motion for appointment as lead plaintiff, along with its selection of co-lead and liaison counsel.  All competing motions are denied.  Midwest's motion to strike and for leave to file a sur-reply is denied as moot.

Dated at Burlington, in the District of Vermont, this 27th day of April, 2012.

/s/William K. Sessions III
William K. Sessions III
U.S. District Court Judge