# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF VERMONT

|  |  |  |
|---|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, SJUNDE AP-FONDEN, BOARD OF TRUSTEES OF THE CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE GOVERNMENT OF THE VIRGIN ISLANDS, AND PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI on behalf of themselves and all others similarly situated, | : : : : : : : : : : : | No. 2:11-CV-00289-WKS |
| Plaintiffs, | : : | |
| v. | : : | |
| GREEN MOUNTAIN COFFEE ROASTERS, INC., LAWRENCE J. BLANFORD and FRANCES G. RATHKE | : : : : | |
| Defendants. | : : | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' 12(c) MOTION SEEKING PARTIAL JUDGMENT ON THE PLEADINGS

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .......................................................................................... ii

INTRODUCTION ........................................................................................................1

I.   PROCEDURAL BACKGROUND TO THE CURRENT MOTION ................................2

II.  LEGAL STANDARDS GOVERNING RULE 12(c) ...................................................4

III. THE MANDATE RULE BARS DEFENDANTS FROM RAISING NEW LEGAL
     CHALLENGES TO THE COMPLAINT AFTER ITS LEGAL SUFFICIENCY
     HAD BEEN SUSTAINED BY THE COURT OF APPEALS ..........................................5

IV.  EVEN IF THE COURT DISREGARDED THE MANDATE RULE, DEFENDANTS'
     MOTION SHOULD BE DENIED ...........................................................................8

     A.   Defendants Distort and Mischaracterize the Allegations of the Complaint ...........8

     B.   As the Court of Appeals Held, the Complaint Sufficiently Alleges that
          Defendants Made False Statements About Green Mountain's Capacity
          Constraints and Inventory Levels in February and May 2011 ..............................10

     C.   Having Already Conceded that Plaintiffs' Claims Do Not Involve Forward-
          Looking Statements, Defendants Cannot Overcome the Complaint's Scienter
          Allegations by Pretending this Case is About False Sales Guidance ...................10

     D.   The Complaint Properly Pleads Loss Causation ...................................................14

CONCLUSION.............................................................................................................17

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Aguilera v. County of Nassau*,
   453 F. Supp. 2d 601 (E.D.N.Y. 2006) .................................................................. 4

*Anderson News, L.L.C. v. Am. Media, Inc.*,
   680 F.3d 162 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 846 (2013) ........................... 4

*Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc.*,
   839 F. Supp. 275 (D. Vt. 1993) ............................................................................ 4

*Benjamin v. Brookhaven Science Assoc., LLC*,
   387 F. Supp. 2d 146 (E.D.N.Y. 2005) .................................................................. 1

*Brio v. Conde Nast*,
   963 F. Supp. 2d 255 (S.D.N.Y. 2013) .................................................................. 7

*County of Suffolk v. Stone & Webster Eng'g Corp.*,
   106 F.3d 1112 (2d Cir. 1997) .............................................................................. 6

*Dura Pharm., Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................................... 14

*Emps' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*,
   794 F.3d 297 (2d Cir. 2015) .......................................................................... *passim*

*Fogel v. Chestnut*,
   668 F.2d 100 (2d Cir.), *cert. denied*, 459 U.S. 100 (1981) ................................... 6

*Freudenberg v. E*Trade Fin. Corp.*,
   712 F. Supp. 2d 171 (S.D.N.Y. 2010) ................................................................ 16

*Golesorkhi v. Green Mountain Coffee Roasters, Inc.*,
   973 F. Supp. 2d 541 (D. Vt. 2013), *aff'd*, 569 Fed. Appx. 43 (2d Cir. 2014) ....... 11

*Horowitz v. Green Mountain Coffee Roasters, Inc.*,
   No. 2:10-cv-227, 2013 WL 1149670 (D. Vt. March 20, 2013) ............................ 11

*In re Bradley Pharm., Inc. Sec. Litig.*,
   421 F. Supp. 2d 822 (D.N.J. 2006) .................................................................... 16

*In re Nortel Networks Corp. Sec. Litig.*,
   238 F.Supp.2d 613 (S.D.N.Y. 2003) .................................................................. 13

*Johnson v. Rowley*,
   569 F.3d 40 (2d Cir. 2009) ................................................................................. 4

*Labor Relations Div. of Constr. Indus. of Massachusetts, Inc. v. Teamsters Local 379*,
   156 F.3d 13 (1st Cir. 1998) ................................................................................. 6

ii

*Lentell v. Merrill Lynch & Co., Inc.*,
    396 F.3d 161 (2d Cir.), *cert. denied*, 546 U.S. 935 (2005) ..................................................... 14

*Mantena v. Johnson*,
    809 F.3d 721 (2d Cir. 2015) ........................................................................................................ 4

*Olsen v. Pratt & Whitney Aircraft, a Div. of United Tech. Corp.*,
    136 F.3d 273 (2d Cir. 1998) ........................................................................................................ 6

*Patel v. Contemporary Classics of Beverly Hills*,
    259 F.3d 123 (2d Cir. 2001) ........................................................................................................ 6

*Patriot Exploration, LLC v. Sandridge Energy, Inc.*,
    951 F.Supp.2d 331 (D. Conn. 2013) ......................................................................................... 13

*Sgalambo v. McKernzie*,
    739 F. Supp. 2d 453 478 (S.D.N.Y. 2010) .............................................................................. 13

*Starr v. Sony BMG Music Entm't*,
    592 F.3d 314 (2d Cir. 2010), *cert. denied*, 562 U.S. 1168 (2011) ............................................ 4

*United States v. Bryce*,
    287 F.3d 249 (2d Cir. 2002) ........................................................................................................ 5

*United States v. Henry*,
    472 F.3d 910 (D.C. Cir.), *cert. denied*, 552 U.S. 888 (2007) ................................................... 6

*United States v. Quintieri*,
    306 F.3d 1217 (2d Cir. 2002), *cert. denied*, 539 U.S. 902 (2003) ........................................... 6

## **Statute**

15 U.S.C. § 78u-5 ......................................................................................................................... 11

## **Rules**

Fed. R. Civ. P. 12(c) ................................................................................................................ 1, 16

Fed. R. Civ. P. 12(d) ..................................................................................................................... 16

Plaintiffs respectfully submit this memorandum of law in opposition to the motion of Defendants Green Mountain Coffee Roasters, Inc., now known as Keurig Green Mountain Coffee, Inc. ("Green Mountain," "GMCR" or the "Company"), and its former CEO Lawrence Blanford and former CFO Frances Rathke (collectively, "the Executive Defendants"), pursuant to Federal Rule of Civil Procedure 12(c), for partial judgment on the pleadings dismissing all claims premised on purchases of Green Mountain common stock before July 27, 2011.

## INTRODUCTION

Defendants' motion for partial judgment on the pleadings was filed on the same date as their opposition to Plaintiffs' motion for class certification. (ECF 259).  Defendants' tactic is transparent:  if they can secure a pleadings-based dismissal of the claims of class members who purchased Green Mountain stock before July 27, 2011, they can cut the class period back by six months before the merits issues they raise are adjudicated on a full record at summary judgment or trial.  Defendants' motion should be denied.  The Second Circuit ruled two years ago that the Complaint sufficiently alleges claims under Section 10(b) and SEC Rule 10b-5 for the *entire* Class Period.  *Emps.' Ret. Sys. of Gov't of the Virgin Islands v. Blanford*, 794 F.3d 297 (2d Cir. 2015).  Defendants' new pleading motion disregards the appellate court's mandate, improperly seeks to accelerate a determination of these issues on a partial record, and should be rejected.[1]

In seeking to overturn the Second Circuit's mandate, Defendants do not even try to point to any change of the governing law because there is none.  Nor do Defendants point to any new affirmative defense warranting a reversal of the Second Circuit's prior ruling.[2]  Instead,

---

[1] References to "Complaint" are to the Corrected Consolidated Complaint (ECF 71).  References to "Def. Mem." are to Defendants' Memorandum of Law in Support of Partial Judgement on the Pleadings.  Except where otherwise noted, all emphases are added and citations omitted.

[2] *See, e.g., Benjamin v. Brookhaven Science Assoc., LLC*, 387 F. Supp. 2d 146 (E.D.N.Y. 2005) (granting 12(c) motion as to portion of claims barred by statute of limitations).

Defendants try to use the vehicle of a 12(c) motion to raise new objections to Plaintiffs' claims—even though they easily could have made their arguments in this Court on their Rule 12(b)(6) motion or in the Court of Appeals, but elected not to do so. Defendants' attempt to raise new pleading challenges at this juncture flies in the face of the Second Circuit's mandate and is not permitted.

Even if the mandate rule were ignored or somehow construed to permit Defendants to make this eleventh-hour challenge to Plaintiffs' four-and-one-half-year-old complaint, Defendants' arguments for a partial judgment on the pleadings are unfounded, as they are all predicated upon a blatant mischaracterization of Plaintiffs' claims. This case is—and has always been—about Defendants' misrepresentations that Green Mountain was "'capacity constrained' and its inventory levels were barely sufficient" to keep up with demand when, in fact, the Company's production of K-cups was outstripping demand. Complaint ¶¶ 47, 58; *see also id*. ¶¶ 1, 46, 50, 52-53, 71, 105.

Defendants nevertheless try to recast Plaintiffs' case into one about false sales guidance, even though Defendants' counsel ***admitted*** at the motion to dismiss hearing before this Court four years ago that this action was not about forward-looking statements. Defendants' mischaracterization of the Complaint based upon a contradiction of their prior arguments to the Court is a measure of how desperate they are to achieve a pleadings-based adjudication on these issues before a full record of their substantial wrongdoing is before the Court or a jury.

## I.     PROCEDURAL BACKGROUND TO THE CURRENT MOTION

Plaintiffs filed the Complaint on November 15, 2012, and on March 1, 2013, Green Mountain and the Executive Defendants separately filed comprehensive motions to dismiss. (ECF 79, 80). Before doing so, they secured judicial approval to expand the page limits for their

briefs (ECF 78) and, in addition to their lengthy legal memoranda, submitted 40 separate exhibits in support of their motions.  On May 20, 2013, Plaintiffs' filed their response in opposition to the motions (ECF 100), and on June 26, 2013, Defendants filed their replies (ECF 104, 105). Altogether, Defendants' legal memoranda spanned 119 pages.

This Court then conducted an extensive hearing on Defendants' motions on December 12, 2013 (ECF 112).  The Court imposed no time limit on the parties' arguments, with the transcript running well over 100 pages (ECF 115).  On December 20, 2013, this Court issued its Opinion and Order (ECF 113) and Final Judgment (ECF 114) dismissing, with prejudice, the Complaint.  *Louisiana Mun. Police Emps.' Ret. Sys. v. Green Mountain Coffee Roasters, Inc.*, No. 2:11-cv-289, 2013 WL6728869 (D. Vt. Dec. 20, 2013).

Plaintiffs appealed from the District Court's dismissal.  In opposition to that appeal, Green Mountain and the Executive Defendants submitted another round of legal briefs, this time totaling over 100 pages.  On July 24, 2015, the Second Circuit issued its ruling and summarized its disposition of the appeal as follows "***We hold that the Complaint pled sufficient facts to state a securities law violation***.  Accordingly, we vacate and remand for further proceedings consistent with this opinion."  *Blanford*, 794 F.3d at 300.

On remand from the Second Circuit, the parties proceeded with discovery.  Fact discovery was concluded in March 2017, and the parties are now engaged in expert discovery which, pursuant to the scheduling order (ECF 233), will conclude by July 14, 2017.  Summary judgment motions are due on August 15, 2017, with briefing on those motions scheduled to be completed by October 30, 2017.  Depending upon the time required for disposition of summary judgment motions, this case should be ready for trial by early 2018.

## II.      LEGAL STANDARDS GOVERNING RULE 12(c)

The Court of Appeals has explained that in deciding a Rule 12(c) motion, the courts apply the same standards as that applicable to a Rule 12(b)(6) motion, "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Mantena v. Johnson*, 809 F.3d 721, 727-28 (2d Cir. 2015).

To survive a Rule 12(c) motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Johnson v. Rowley*, 569 F.3d 40, 44 (2d Cir. 2009). "Because plausibility is a standard lower than probability, a given set of actions may well be subject to diverging interpretations, each of which is plausible." *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 184 (2d Cir. 2012), *cert. denied*, 133 S.Ct. 846 (2013). "The choice between two plausible inferences that may be drawn from factual allegations is not a choice to be made by the court on a Rule 12(b)(6) motion." *Id*. at 185. Thus, "although an innocuous interpretation of the defendants' conduct may be plausible," it "is not the province of the court to dismiss the complaint on the basis of the court's choice among plausible alternatives." *Id*. at 190; *Starr v. Sony BMG Music Entm't*, 592 F.3d 314, 322-24 (2d Cir. 2010), *cert. denied*, 562 U.S. 1168 (2011).

Moreover, in applying Rule 12(c), the complaint's allegations "must be construed liberally" in favor of plaintiffs. *Barquin v. Roman Catholic Diocese of Burlington, Vermont, Inc*., 839 F. Supp. 275, 278 (D. Vt. 1993) (Parker, C.J.) (citing *Ad-Hoc Committee of the Baruch Black and Hispanic Alumni Assoc. v. Bernard M. Baruch College*, 835 F.2d 980, 982 (2d Cir. 1987)). "As with a 12(b)(6) motion to dismiss, the question on a 12(c) motion is not whether the plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his claims." *Aguilera v. County of Nassau*, 453 F. Supp. 2d 601, 606 (E.D.N.Y. 2006).

**III.   THE MANDATE RULE BARS DEFENDANTS FROM RAISING NEW LEGAL CHALLENGES TO THE COMPLAINT AFTER ITS LEGAL SUFFICIENCY HAD BEEN SUSTAINED BY THE COURT OF APPEALS**

Defendants had ample opportunity, both before this Court on their motions to dismiss, and on appeal before the Second Circuit seeking to uphold that dismissal, to raise their current challenges to the Complaint.[3]  Plaintiffs' Complaint is not a new pleading, and Defendants were always aware of the facts surrounding Plaintiffs' allegations.  Consistent with the mandate rule, which is an aspect of the law of the case doctrine, the fact that Defendants previously elected not to raise their now-belated arguments prohibits their assertion here.

The federal courts have long adhered to the broad application of the mandate rule.  As the Second Circuit has explained:

> The mandate rule "compels compliance on remand with the dictates of the superior court and foreclose relitigation of issues expressly or *impliedly* decided by the appellate court." *United States v. Zvi,* 242 F.3d 89, 95 (2d Cir.2001) (quoting *United States v. Bell,* 5 F.3d 64, 66 (4th Cir.1993)). "Likewise, where an issue [is] ripe for review at the time of the initial appeal but was nonetheless foregone, the mandate rule generally prohibits the district court from reopening the issue on remand unless the mandate can reasonably be understood as permitting it to do so." *Id.* "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specifics of the dictates of the remand order as well as the broader 'spirit of the mandate.' " *Id.* (quoting *United States v. Kikumura,* 947 F.2d 72,76 (3d Cir.1991)).

*United States v. Bryce*, 287 F.3d 249, 253 (2d Cir. 2002) (emphasis in original).  Here, Defendants' current challenge to the Complaint could have been readily asserted in their previous motions to dismiss, or offered as an alternative basis to affirm the District Court's

---

[3] *See CGL, LLC v. Schwab*, No. 11-04593, 2012 WL 4321972, *3 (E.D. Pa. Sept. 21, 2012) (court declines to consider arguments that were previously available to defendants but not raised on earlier motion to dismiss).

decision on appeal, even if this Court had not decided the motions to dismiss on that ground.[4] Defendants chose to do neither.

Defendants cannot game the system by electing to hold back a legal argument on the first appeal in order to hold it in reserve for later use on remand or in a subsequent appeal. *See, e.g., Fogel v. Chestnut*, 668 F.2d 100 (2d Cir.) (Friendly, J.), *cert. denied*, 459 U.S. 100 (1981). As Judge Friendly explained in rejecting the argument that defendants were not precluded from now litigating the existence of a private right of action because a prior appeal did not ***expressly*** affirm that right of action, the law of the case "principle applies as well to everything decided by necessary implication." *Id.* at 108-09.

As the Second Circuit reasoned, "[i]t would be absurd that a party who has chosen not to argue a point on a first appeal should stand better as regards the law of the case than one who had argued and lost." *Id.* at 109; *see also County of Suffolk v. Stone & Webster Eng'g Corp.,* 106 F.3d 1112, 1117 (2d Cir. 1997) (same); *United States v. Henry*, 472 F.3d 910, 913 (D.C. Cir.), *cert. denied*, 552 U.S. 888 (2007) (same); *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002), *cert. denied*, 539 U.S. 902 (2003) (mandate rule forecloses party from raising issues that he waived by not raising them in prior trial court proceeding or on previous appeal); *Labor Relations Div. of Constr. Indus. of Massachusetts, Inc. v. Teamsters Local 379*, 156 F.3d 13, 17 (1st Cir. 1998) ("When a party could have raised an argument in his initial appeal, and failed to do so, he has generally waived his right to raise that argument on remand or on appeal from that remand.").[5]

---

[4] *See, e.g., Olsen v. Pratt & Whitney Aircraft, a Div. of United Tech. Corp.,* 136 F.3d 273 (2d Cir. 1998) (Court of Appeals affirms District Court's dismissal of claim on grounds not reached by trial court).

[5] The decision in *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001), which states that "the defense of failure to state a claim is not waivable," does not dictate

Thus, because Defendants chose not to assert their present arguments either to support their motions to dismiss or in defense of the District Court's dismissal of the Complaint, they must live with the Court of Appeals' mandate that "the Complaint pled sufficient facts to state a securities law violation." *Blanford*, 794 F.3d at 300.[6]

Defendants offer no excuse for their failure to raise these issues previously before either the District Court or the Court of Appeals.  And despite their position that Plaintiffs' theory of the case—that Defendants falsely represented that Green Mountain was capacity constrained throughout the Class Period—is newly forged, as the record verifies, Defendants have understood from the ***beginning*** that Plaintiff's claims are predicated upon this theory.  For example, in Green Mountain's reply brief in support of their motion to dismiss (filed in *June 2013*), the Company stated:  "Plaintiffs contend that Defendants created a false impression of phantom demand by stating Green Mountain was ***capacity constrained*** during earnings calls for the first three quarters of FY 2011."  Defendant Green Mountain Coffee Roasters, Inc.'s Reply Memorandum in Further Support of its Motion to Dismiss the Corrected Consolidate Complaint ("Green Mt. MTD Reply Mem.") at 5 (ECF 105).

---

a different result.  Plaintiffs are not asserting that Defendants ***waived*** their right to challenge the legal sufficiency of the Complaint.  Rather, Defendants already ***fully exercised*** their right to do so when they litigated this challenge to an unsuccessful conclusion, and then neither moved for a rehearing nor petitioned the Supreme Court for a writ of certiorari.  From that point forward, all parties became bound by the Court of Appeals' precedential decision upholding the legal sufficiency of the Complaint, pursuant to the mandate rule.

[6] The application of the mandate rule also explains why Defendants' reliance, Def. Mem. at 14, n. 12, on the footnote in *Brio v. Conde Nast*, 963 F. Supp. 2d 255, 266 n.2 (S.D.N.Y. 2013), for the proposition that Rule 12(h)(2) authorizes defendants to file successive motions to dismiss does not authorize Defendants to secure the dismissal of Plaintiff's Complaint here.  Generally speaking, until an appeal is taken and a decision is issued by an appellate court, there is no mandate, and thus no mandate rule to apply.  Here, however, Defendants obtained a final judgment and Plaintiffs successfully appealed, resulting in the mandate sustaining their claims.  At that point, the mandate rule trumps any right to make further motions in the trial court seeking to dismiss the Complaint.

Defendants cannot pretend now that this is a new theory.

Moreover, pursuant to the mandate rule, the legal sufficiency of Plaintiff's Complaint was decided by the Second Circuit's ruling that "the Complaint pled sufficient facts to state a securities law violation." *Blanford*, 794 F.3d at 300.

## IV. EVEN IF THE COURT DISREGARDED THE MANDATE RULE, DEFENDANTS' MOTION SHOULD BE DENIED

Even if this Court disregarded long-standing Second Circuit precedent regarding the mandate rule, Defendants fail to show that they are entitled to the relief they seek.

### A. Defendants Distort and Mischaracterize the Allegations of the Complaint

In their motion, Defendants revisit the two issues where the District Court found the Complaint lacking, and where the Second Circuit overturned those determinations, namely, whether Defendants made a false statement (Def. Mem. at 7-9), and whether the Complaint properly alleges scienter. *Id*. at 9-12.

Defendants offer a new twist by arguing that they are entitled to partial judgment on the pleadings dismissing all claims predicated upon their misstatements in February and May 2011—notwithstanding the Second Circuit's ruling that the Complaint stated an actionable claim *for the entire Class Period*. In support, they now assert that the Complaint is predicated upon allegations of a "false growth story" which cannot be sustained since the Company exceeded the sales growth guidance it issued for those first two quarters. Def. Mem. at 2-3. Thus, because Green Mountain's sales growth guidance did not turn out to be wrong, Defendants argue that there can be no false statements or showing of scienter in connection with those projections. *Id*. at 7-12.

Defendants distort Plaintiffs' Complaint beyond recognition in order to construct an argument for dismissal. Plaintiffs *never alleged* that Green Mountain's sales projections were

8

false statements, and the Court can scour the Complaint without finding any reference to quarterly sales guidance. *See* "False and Misleading Class Period Statements" section of Complaint, ¶¶ 104-118 (devoid of allegations of false sales guidance). Although the Complaint does refer to the Company's false growth story, it makes clear that the heart of Plaintiffs' claim is the allegation that Defendants falsely represented to investors that the Company was capacity constrained in meeting growing demands for its products and it was not building up excess inventory levels. For example, in the very first paragraph of the Complaint, Plaintiffs allege:

> Throughout the Class Period, Defendants told investors that the Company was ***straining its production capacity*** in an effort to meet skyrocketing consumer demand for its Keurig and K-Cup products, and it was '***not building any excess inventories at all at retail.***' These and similar statements to investors were designed to create the false impression that GMCR was a strong business that was well positioned to continue to experience significant future growth.

Complaint ¶ 1.[7] Plaintiffs' claims simply are not predicated upon, and thus cannot be defeated by, a comparison of the Company's reported performance with its sales projections.

Moreover, Defendants clearly understood the thrust of Plaintiffs' claims when they moved to dismiss the Complaint. For example, Green Mountain's opening brief in support of its motion to dismiss stated: "Plaintiffs contend Green Mountain misled investors about its K-Cup® portion pack ***production capacity and inventory position*** in the first three quarters of FY 2011, allegedly to support a false 'growth story.'" Green Mountain Mem. of Law in Support of Motion to Dismiss the Corrected Consolidated Complaint at 2 (ECF 80). Green Mountain's reply brief

---

[7] *See also id.* ¶47 ("Defendants deliberately created a false impression that GMCR was far more successful than it actually was and that demand for its products was growing at such a remarkable pace that the Company was '*capacity constrained*' and its inventory levels were barely sufficient (and in some cases not sufficient) to meet demand."); ¶52 ("…Defendants' Class Period statements that GMCR was '*capacity constrained*' were false."); ¶58 ("GMCR was not ***capacity constrained*** and, contrary to what Defendants were telling the market, did not need to continually build capacity."); ¶105 ("On February 2, 2011 the Company held a conference call . . . during which Defendant Blanford stated that demand ... was so strong that the Company was ***capacity constrained***."); *see also* ¶¶46, 50, 53, 71.

similarly stated: "Plaintiffs contend Defendants created a false impression of phantom demand by stating Green Mountain was ***capacity constrained*** during earnings calls for the first three quarters of FY 2011."   Green Mt. MTD Reply Mem. at 5.   Defendants' bare-faced mischaracterization of the Complaint cannot overcome the mandate of the Second Circuit upholding the Complaint.

**B.     As the Court of Appeals Held, the Complaint Sufficiently Alleges that Defendants Made False Statements About Green Mountain's Capacity Constraints and Inventory Levels in February and May 2011**

The Court of Appeals concluded that the Complaint sufficiently alleges "(1) specific misleading statements by Defendants about the status of Green Mountain's inventory during the Class Period, the identity of the speakers, and where and when the statements were made and (2) explains why these statements were fraudulent." *Blanford*, 794 F.3d at 306.  The Second Circuit expressly noted that among the alleged misleading statements cited in the Complaint were statements "indicating that "Green Mountain was struggling to meet demand and had no excess inventory," including statements on the February 2, 2011 investor call that reiterated Green Mountain's desire to fulfill unmet demand and statements on the May 3, 2011 investor call that "we are not building any excess inventories." *Id.*

Defendants cannot now rewrite Plaintiffs' Complaint—sustained by the Court of Appeals—and convert it into a different theory of liability to serve as a "straw man" for their belated attacks on Plaintiffs' claims.

**C.     Having Already Conceded that Plaintiffs' Claims Do Not Involve Forward-Looking Statements, Defendants Cannot Overcome the Complaint's Scienter Allegations by Pretending this Case is About False Sales Guidance**

After trying to rewrite Plaintiffs' Complaint to make assertions about Green Mountain's sales guidance that Plaintiffs never alleged to be actionably false, Defendants then attempt to

have this Court revisit scienter by asserting that these invented misstatements constitute forward-looking statements protected by the PSLRA's safe harbor provision, 15 U.S.C. §78u-5.  Def. Mem. at 7-9.  This attempt fails for at least two reasons.

*First*, based upon Defendants' own argument in support of their previous motions to dismiss, Defendants should be estopped from now arguing that the February and May 2011 statements alleged to be false in the Complaint are forward-looking statements.  *See* Motion to Dismiss Hearing at 5-6 (ECF 115).

As the Court will recall, there had been three separate proposed securities class actions filed, each assigned to Your Honor, against Green Mountain and its executives, with each covering a different proposed class period.  (The present action was the second action filed.)  The first action, *Horowitz v. Green Mountain Coffee Roasters, Inc*., No. 2:10-cv-00227 (complaint filed September 30, 2010), was brought on behalf of a proposed class of purchasers who acquired their Green Mountain stock between July 28 and Sept. 28, 2010, and involved allegations of improper revenue recognition.  The third action, *Golesorkhi v. v. Green Mountain Coffee Roasters, Inc*., No. 2:12-cv-00091 (complaint filed May 7, 2012), was brought on behalf of a proposed class of purchasers between February 2 and May 2, 2012, and involved challenges to the Company's sales projections.

By the time of the argument on the motions to dismiss the present action, this Court had already granted motions to dismiss the other two cases, *Horowitz v. Green Mountain Coffee Roasters, Inc*., No. 2:10-cv-227, 2013 WL 1149670 (D. Vt. March 20, 2013) (dismissing second amended complaint for failure to adequately plead scienter), and *Golesorkhi v. Green Mountain Coffee Roasters, Inc*., 973 F. Supp. 2d 541 (D. Vt. 2013), *aff'd*, 569 Fed. Appx. 43 (2d Cir. 2014)

(dismissing complaint after holding that defendants' alleged misstatements constituted forward-looking statements).

During the argument, counsel for Green Mountain expressly distinguished the allegations of the present case from those of *Golesorkhi*, admitting that the allegations in this case do *not* involve forward-looking statements:

> MR. BODNER: Essentially the plaintiff's claim [in the present action] that for the first three quarters of fiscal 2011 the defendants, Green Mountain and the two individual defendants, attempted to perpetrate what, and these are using their words, a ***fraudulent growth story***, but that false story of growth came crashing down, the truth was magically revealed in the fourth quarter of 2011.
>
> Now that's a strange theory, Your Honor, because how can defendants be liable for fraud, for a false growth story when by the plaintiff's own admission Green Mountain Coffee Roasters, Green Mountain's net sales grew year over year by 91 percent in the very quarter in which the plaintiff's claim that this false story of growth was revealed.
>
> THE COURT:    Well, but their expectation was in that fourth quarter that growth would be somewhere in the vicinity of 110 percent.
>
> MR. BODNER: ***No***, Your Honor, actually, the guidance and, again, ***their claim is not so much forward looking statements***, they are not claiming, because then you would be hearing arguments about the safe harbor that this Court is very well aware of from the Golaskorski [sic] case.
>
> ***They are talking about historical false statements, not false forward looking statements.***

Motion to Dismiss Hearing at 5-6 (ECF 115).  In the continuing colloquy, the Court noted that Plaintiffs were *not* making a claim predicated upon the Company falling short of its projections, and Green Mountain's counsel acknowledged the true nature of Plaintiff's claim, namely, that Defendants were painting a false picture of demand for investors while the Company was "actually drowning in [excess] inventory":

> THE COURT: No, I mean their, ***I appreciate the fact that they are not relying upon the fact that there was supposed to be 110 percent growth, it was only 91 percent growth***.  They are using that as an example, as I understand their pleadings, to say that there was this plan in place over the

first, second, third quarter, going into the fourth quarter, to begin to expand inventory, to make sure that there is a growth going, their production levels increased, their obsolescence levels increased and *as a result they could show to the marketplace that this, in fact, is a company which continues to grow as evidenced by their production figures*. I assume that that's right. That's their scheme.

MR. BODNER: Well, that's the alleged scheme. . . . But nonetheless *their theory is that Green Mountain lied during the class period that it was straining to keep up with demand when in reality they say that Green Mountain was actually drowning in inventory*.

Motion to Dismiss Hearing at 7-9 (ECF 115).

Thus, as Defendants' counsel acknowledged before this Court, none of the challenged misstatements—in February, May or July 2011—involved sales projections or other forward-looking statements.

*Second*, even if Defendants' counsel had not made this admission, it is beyond dispute that representations concerning whether the Company was struggling to keep up with demand or was drowning in inventory constitute representations of present or historical facts, not future projections, and that such statements are not protected forward-looking statements. *See Sgalambo v. McKernzie*, 739 F. Supp. 2d 453, 478 & n.147 (S.D.N.Y. 2010) (misstatements that either state a present or historical fact alone or incorporate forward-looking aspects into statements of present or historical fact do not constitute forward-looking statements protected by the PSLRA's safe harbor provision); *Patriot Exploration, LLC v. Sandridge Energy, Inc*., 951 F.Supp. 2d 331, 357 (D. Conn. 2013) (following *Sgalambo*); *In re Nortel Networks Corp. Sec. Litig*., 238 F.Supp. 2d 613, 629 (S.D.N.Y. 2003) (when allegedly false statement has both a forward-looking aspect and an aspect that encompasses a representation of present fact, safe harbor provision does not apply).

13

Accordingly, there is no need to further address Defendants' argument that their February and May 2011 sales projections are protected by the safe harbor for forward-looking statements—even assuming Plaintiffs had alleged such projections to be actionably false.

### D.   The Complaint Properly Pleads Loss Causation

Finally, Defendants assert that the Complaint fails to plead loss causation as to the February and May 2011 sales projections because, they claim, "the alleged misstatements supporting that 'growth story' did not cause and could not have caused any of the losses Plaintiffs claim to have suffered when the actual pace of growth was announced." Def. Mem. at 12. Defendants' argument is without merit.

With respect to loss causation, the Supreme Court merely requires a plaintiff to plead a short and plain statement showing that the alleged misstatements caused a loss, stating, "it should not prove burdensome for a plaintiff who has suffered an economic loss to provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 347 (2005). Thus, loss causation is not a matter requiring detailed pleadings to survive a motion to dismiss.

The Second Circuit's decision in *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161 (2d Cir.), *cert. denied*, 546 U.S. 935 (2005), upon which Defendants principally rely, holds that to adequately plead loss causation, a plaintiff must allege that the subject of the fraudulent statement or omission was misstated or concealed and, when disclosed, it negatively affected the value of the stock. 396 F.3d at 173.

The Complaint contains the requisite allegations here. As discussed above, Plaintiffs' claims are ***not*** about misrepresentations concerning the "pace of growth" or forward-looking sales guidance. Def. Mem. at 12. Rather, in the words of Green Mountain's counsel at the prior hearing, Plaintiffs allege that "Green Mountain lied during the class period that it was ***straining***

14

*to keep up with demand* when in reality they say that Green Mountain was actually drowning in inventory."  Motion to Dismiss Hearing at 8-9 (ECF 115).  Consistent with that characterization of the case, the Complaint alleges that Defendants made misrepresentations concerning the Company's capacity constraints and inventory levels on February 2, 2011, including statements that "demand is definitely stretching our ability to supply," that "we've not quite caught up with [the] demand curve," and that the Company 'remain[s] focused on increasing production to fulfill unmet demand ..."  Complaint ¶¶ 105-106.  The Complaint further alleges that Defendants made similar misrepresentations on May 3, 2011 that the Company is "not building any excess inventories...'"  *Id.* ¶110.

The Complaint then alleges that the truth regarding Green Mountain's capacity constraints was revealed on November 9, 2011 when the Company disclosed its skyrocketing inventory levels, clearly signaling that the Company had not been struggling to meet demand, and that the market was surprised by the news, with one analyst asking why the Company had *"talked about it being capacity constrained"* while inventories had shot up 156% year over year. Complaint ¶¶ 96-103.  As this analyst posed to Defendants:  "*So I guess I'm trying to figure out why inventories are building when you've talked about running your equipment basically 24/7.*"  *Id.* ¶ 99.  The Complaint further alleges that on this news, Green Mountain's stock fell 40 percent, from a close of $67.02 on November 9 to a close of $40.89 on November 10.  *Id.* ¶¶ 103, 134-136.

Given the alleged false statements about capacity constraints and inventory levels, the fact that Green Mountain revealed on November 9 that it had exceeded the annual net sales guidance it issued in February and May is irrelevant to the loss causation analysis at the pleadings stage, as Plaintiffs allege that the Company's November 9 disclosure "revealed the

truth about the false and misleading statements and disclosed facts that had been previously concealed by the Defendants' wrongful conduct," i.e., that the Company, in actuality, was not capacity constrained. *Id.* ¶ 135; *see also id.* ¶¶ 98-103 (describing analysts' reaction to inventory spike).

Plaintiffs' allegations are sufficient for pleading loss causation. "[N]either the Supreme Court in *Dura*, nor any other court addressing the loss causation pleading standard, require a corrective disclosure be a 'mirror image' tantamount to a confession of fraud." *Freudenberg v. E*Trade Fin. Corp.*, 712 F. Supp. 2d 171, 202 (S.D.N.Y. 2010). Rather, all that is "required under *Dura* is … that the 'truth' about the company's underlying condition, when revealed, causes the 'economic loss.'" *Id.* (internal citation omitted); *see also In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 828 (D.N.J. 2006) ("In *Dura*, the Supreme Court only suggested that the plaintiff needed to have alleged ***in some fashion*** that 'the truth became known' before 'the share price fell.'").[8]

---

[8] If there is any doubt as to the *bona fides* of Plaintiffs' case for loss causation, Plaintiffs have, in accordance with the Court's scheduling order (ECF 233), served on Defendants the Opening Expert Report of David M. Tabak, Ph.D. demonstrating, *inter alia*, how loss causation is established in this case. Dr. Tabak's reply report is due on June 15, 2017. *See id.* However, inasmuch as a motion for judgment on the pleadings is limited to the face of the pleadings (and materials incorporated therein), and Plaintiffs do <u>not</u> elect to convert this Rule 12(c) motion into a motion for summary judgment before the close of expert discovery, especially since summary judgment will be addressed in motions to be filed as early as August 15, 2017, Plaintiffs submit that it would be inappropriate for the Court to consider either sides' expert reports, or any other materials outside the pleadings, in connection with the pending Rule 12(c) motion. Defendants' submission similarly does not ask this Court to go beyond the pleadings in ruling upon this motion. Def. Mem. at 1 ("This motion for partial judgment on the pleadings under Federal Rule of Civil Procedure 12(c) seeks to dispose of a portion of Plaintiffs' claims that should be dismissed now, ***based solely on their pleadings and the documents incorporated by reference therein***.").

If, notwithstanding the position of Plaintiffs and Defendants, the Court intends to convert Defendants' motion into one for partial summary judgment, Plaintiffs respectfully request that they be given advance notice of this determination and "a reasonable opportunity to present all the material that is pertinent" to a summary judgment motion, pursuant to Fed. R. Civ. P. 12(d).

## CONCLUSION

For the foregoing reasons, Defendants' motion should be denied.

Dated: May 19, 2017                          Respectfully submitted,

                                              _/s/ Mark R. Rosen_____
                                             **BARRACK, RODOS & BACINE**
                                             Mark R. Rosen
                                             Jeffrey A. Barrack
                                             Lisa M. Port
                                             3300 Two Commerce Square
                                             2001 Market Street, Ste. 3300
                                             Philadelphia, PA 19103
                                             Telephone: (215) 963-0600
                                             Facsimile: (215) 963-0838

                                             **BERNSTEIN LITOWITZ BERGER**
                                               **& GROSSMANN LLP**
                                             John C. Browne
                                             Rebecca E. Boon
                                             Julia K. Tebor
                                             1251 Avenue of the Americas
                                             New York, NY 10020
                                             Telephone: (212) 554-1400
                                             Facsimile: (212) 554-1444

                                             **KESSLER TOPAZ MELTZER**
                                               **& CHECK, LLP**
                                             Matthew L. Mustokoff
                                             Kimberly A. Justice
                                             Joshua D'Ancona
                                             Joshua A. Materese
                                             280 King of Prussia Road
                                             Radnor, PA 19087
                                             Telephone: (610) 667-7706
                                             Facsimile: (610) 667-7056

                                             *Attorneys for Plaintiffs and the Proposed*
                                             *Class*

17

**LYNN, LYNN, BLACKMAN**
**& MANITSKY, P.C.**
Andrew D. Manitsky
76 St. Paul Street, Suite 400
Burlington, VT 05401
Telephone: (802) 860-1500
Facsimile: (802) 860-1580

*Liaison Counsel for Plaintiffs*