UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES RETIREMENT SYSTEM, SJUNDE AP-FONDEN, BOARD OF TRUSTEES OF THE CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE GOVERNMENT OF THE VIRGIN ISLANDS, AND PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>GREEN MOUNTAIN COFFEE ROASTERS, INC., LAWRENCE J. BLANFORD and FRANCES G. RATHKE,<br><br>Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. 2:11-cv-289 |

## OPINION AND ORDER

This is a putative class action brought by several institutional investors against Keurig Green Mountain, Inc., formerly known as Green Mountain Coffee Roasters, Inc. ("Green Mountain"), its former Chief Executive Officer, Lawrence Blanford, and its former Chief Financial Officer, Frances Rathke. Defendants have moved for partial judgment in their favor pursuant to Federal Rule of Civil Procedure 12(c), arguing that allegations of misleading statements and financial losses are unsupported for the period prior to July 27, 2011. As set forth below, the motion for partial dismissal is **denied.**

**Factual Summary**

Green Mountain manufactures the Keurig single-cup brewing system and other coffee-related products.  The Corrected Consolidated Complaint (the "Complaint") alleges that between February 2, 2011 and November 9, 2011 (the "Class Period"), Defendants made fraudulent misrepresentations about Green Mountain's inventory, business performance, and growth prospects in a manner designed to mislead investors.  According to the Complaint, Defendants stated publicly during the Class Period that Green Mountain sales were increasing steadily, and that the company was working to increase production without accumulating excess inventory.  In fact, Green Mountain was allegedly accumulating a significant overstock of expiring and unsold product which, when ultimately revealed, contributed to a significant drop in the stock price.  In the months immediately preceding that price drop, Defendants Rathke and Blanford sold shares of Green Mountain stock amounting to approximately $49 million in personal proceeds.

Defendants now move for partial judgment on the pleadings, arguing that even if the Court accepts the allegations in the Complaint as true, claims of a "false growth story" prior to July 27, 2011 are factually unsupported and fail as a matter of law. Specifically, Defendants claim that public statements on February 2, 2011 and May 3, 2011 made growth projections that turned out

2

to be true (and even a bit low).  They also claim that those
projections were forward-looking with "meaningful cautionary
language," and were thus protected by the Private Securities
Litigation Reform Act ("PSLRA").  *See* 15 U.S.C. § 78u-
5(c)(1)(A)(I).  Defendants further argue that because the growth
projections were borne out, Plaintiffs have failed to identify a
compelling inference of scienter.  Finally, Defendants claim that
Plaintiffs cannot show loss causation through July 27, 2011,
since the stock price increased prior to that time.

Plaintiffs oppose the motion to dismiss, asserting that this
case is not about performance predictions, but is instead about
Defendants' representations that Green Mountain was "capacity
constrained" with production and inventory levels barely
sufficient to meet demand.  Losses allegedly accrued when Green
Mountain's true inventory levels were revealed and its share
price dropped significantly.  Plaintiffs further contend that
because the Second Circuit rejected Defendants' initial effort to
have the entire case dismissed at the pleadings stage, the
mandate rule prohibits a partial dismissal on the basis of those
same pleadings.

### Procedural History

Plaintiffs assert violations of Sections 10(b) and 20(a) of
the Exchange Act, 15 U.S.C. §§ 78j(b), 78t(a), and SEC Rule
10b-5, 17 C.F.R. § 240.10b-5.  On March 1, 2013, Defendants moved

3

to dismiss for failure to state a claim under Federal Rules of
Civil Procedure 9(b) and 12(b)(6), and the PSLRA, 15 U.S.C. §
78u-4.  The motion to dismiss argued that Plaintiffs had failed
to allege a false statement of material fact, and had failed to
plead a compelling inference of scienter.  This Court granted
Defendants' motion and dismissed the case.

On July 24, 2015, the Second Circuit vacated the Court's
ruling and remanded the case for further proceedings.  In doing
so, the court noted that "[t]he Complaint is replete with
statements from various top executives that Green Mountain was
struggling to meet demand and business was booming throughout the
Class Period."  *Employees' Ret. Sys. of Gov't of the Virgin*
*Islands v. Blanford*, 794 F.3d 297, 306-07 (2d Cir. 2015)
(citations omitted).  "In fact, during the Class Period, Green
Mountain was accumulating a significant overstock of expiring and
unsold product," which, when publicly revealed, resulted in a
sharp drop in the stock price.  *Id.* at 301.  The Second Circuit
concluded that Defendants' allegedly misleading statements about
their ability to meet product demand, their lucrative stock
sales, and allegations of related misconduct by high level
managers were sufficient to state a claim of fraud and created
the necessary inference of scienter.

On remand, the parties have engaged in discovery, and fact
discovery is now closed.  Summary judgment motions are due on

4

September 5, 2017.  Briefing on summary judgment is scheduled to
be completed by December 1, 2017.

**Discussion**

**I.   Legal Standard**

Pursuant to Rule 12(c), at any time after the pleadings are
closed but before trial commences a party may move for judgment
on the pleadings.  The legal standards applicable to a Rule 12(c)
motion for judgment on the pleadings and a motion to dismiss
pursuant to Rule 12(b)(6) are identical.  *Hayden v. Paterson*, 594
F.3d 150, 160 (2d Cir. 2010).  Accordingly, in deciding a motion
under Rule 12(c), the Court evaluates the sufficiency of the
complaint under the "two-pronged approach" announced by the
Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).
First, legal conclusions and "[t]hreadbare recitals of the
elements of a cause of action, supported by mere conclusory
statements" are not sufficient.  *Id.* at 678.  Second, "[w]hen
there are well-pleaded factual allegations, a court should assume
their veracity and then determine whether they plausibly give
rise to an entitlement to relief."  *Id.* at 679.

A claim is facially plausible "when the plaintiff pleads
factual content that allows the court to draw the reasonable
inference that the defendant is liable for the misconduct
alleged."  *Id.* at 678.  "The plausibility standard is not akin to
a 'probability requirement,' but it asks for more than a sheer

possibility that a defendant has acted unlawfully." *Id.*

Here, Plaintiffs allege violations of federal securities laws. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (applying plausibility standard to securities fraud claim). "Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the PSLRA and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009). The PSLRA specifically requires a complaint to demonstrate that the defendant made "[m]isleading statements and omissions . . . of a material fact," and acted with the "[r]equired state of mind" (the "scienter requirement"). *See ATSI Commc'ns*, 493 F.3d at 99.

## II. The "False Growth Story"

A fundamental issue raised by the Defendants' motion to dismiss is whether they have properly characterized the Plaintiffs' allegation of a "false growth story." Defendants contend that partial dismissal is warranted because sales projections in February and May of 2011 were not misleading, and actually *underestimated* eventual sales performance. Accordingly, they argue, the allegation of a "false growth story" for the period prior to July 27, 2011 is unsupported. Plaintiffs counter that their allegations rely not upon false sales projections, but

6

instead upon misleading statements with regard to Green Mountain's inventories during the Class Period.

Defendants' contentions about their sales projections are factually accurate. The pleadings and incorporated documents show that Green Mountain exceeded the quarterly sales growth guidance issued in the first two quarterly earnings releases of FY 2011. The February 2 announcement forecast sales growth of 92%-97% for the second quarter of 2011, and the company subsequently achieved 101% sales growth during that quarter. Green Mountain also projected 75% to 80% annual sales growth for FY 2011, and ultimately achieved 95% sales growth on the year. On May 3, 2011, the company issued Q3 quarterly sales growth guidance of 90% to 95%. The company actually achieved 127% growth for that quarter. The May announcement also raised its fiscal year guidance to 82% to 87% which, as noted, was exceeded when Green Mountain achieved 95% sales growth over FY 2010. The company did not meet its July 27, 2011 guidance, which projected 100%-105%. Sales growth in Q4 2011 was 91%.

Focusing on the February and May projections, Defendants argue that there were no false statements of material fact that would have misled investors. They also cite the PSLRA, which provides a safe harbor for forward-looking statements that include "meaningful cautionary statements." *See* 15 U.S.C. § 78u-5(c)(1)(A)(I). Green Mountain's February and May statements both

provided that "[c]ertain statements contained herein . . . are forward-looking statements" and that certain factors, such as a challenging economic environment and the company's ability to expand operations, might impact future results.  The statements also warned generally that actual results might differ from projections.  Given the PSLRA's safe harbor, and the accuracy of the positive sales projections, Defendants contend that Plaintiffs' claims of scienter and loss causation cannot stand.

While Defendants' contentions with respect to sales projections are factually accurate, their arguments miss the essence of the Complaint.  Indeed, Plaintiffs do not contest either the content of Green Mountain's sales projections or the resulting sales figures.  Plaintiffs instead claim that they were misled about production and inventory levels, and that those misleading statements led to financial losses.

In the first paragraph of the introduction section of the Complaint, Plaintiffs allege that "Defendants told investors that the Company was straining its production capacity in an effort to meet skyrocketing consumer demand for its Keurig and K-Cup products, and it was ***not building any excess inventories at all at retail.***"  ECF No. 71 at 4 (emphasis in original).  The Complaint claims that of the May 3, 2011 conference call, Green Mountain was "instead producing far more product than necessary to meet demand, understating the excessive amount of inventory in

the Company's warehouses and otherwise misleading investors."
*Id.* at 49.  The Complaint makes the same allegations with respect
to the July 27, 2011 conference call, claiming that rather than
maintaining appropriate inventories, Green Mountain was
"continuing to hide the fact that inventory levels were
excessively high causing vast quantities of inventory to become
expired and obsolete." *Id.* at 50-51.  Consequently, Plaintiffs
make clear in their pleadings that production capacity and
inventory were fundamental parts of Green Mountain's allegedly
"false growth story."

The Second Circuit acknowledged this focus on inventories in
its ruling on the prior motion to dismiss.  The Court of Appeals
summarized Plaintiffs' pleadings as alleging that "Green Mountain
was hiding stockpiled and expiring coffee products . . . while it
fraudulently continued to assure investors that it was straining
to meet an increasing demand for its products, all in an effort
to drive up its stock price." *Blanford*, 794 F.3d at 306.
Moreover, in finding support for the requisite scienter, the
Second Circuit cited allegations of "(1) Defendants' efforts to
deceive auditors and investors and conceal the true facts about
Green Mountain's excess inventory, and (2) Defendants'
significant personal gain from these efforts." *Id.* at 308.

Furthermore, in prior arguments before the Court,
Plaintiffs' counsel has conceded that this case is not about

forward-looking statements or predictions, and instead revolves around allegations of false statements with regard to past and existing inventories.  At oral argument on the prior motion to dismiss, counsel for the Defendants clarified that Plaintiffs "are talking about historical false statements, not false forward looking statements."  ECF No. 115 at 6.  During that same hearing, counsel summarized his view of Plaintiffs' theory as: "Green Mountain lied during the class period that it was straining to keep up with demand when in reality they say that Green Mountain was actually drowning in inventory."  *Id.* at 8-9. Given these concessions, the clarity of Plaintiffs' pleadings, and the Second Circuit's acknowledgment of Plaintiffs' theory as one that focuses upon production and inventory levels, Defendants' cannot rely solely upon forward-looking statements and fulfilled sales predictions as a basis for dismissal.

## III. The Mandate Rule

Plaintiffs argue that, beyond any possible mis-characterization of the Complaint, the Second Circuit's ruling bars dismissal under "the mandate rule."  "The mandate rule compels compliance on remand with the dictates of the superior court and forecloses relitigation of issues expressly or impliedly decided by the appellate court."  *United States v. Ben Zvi*, 242 F.3d 89, 95 (2d Cir. 2001).  "A mandate, therefore, may expressly dispose of certain issues raised on appeal, or if the

10

disposition of an issue is 'necessarily implied' by our decision, a mandate may also foreclose such an issue from being considered by the lower court." *In re Coudert Bros. LLP*, 809 F.3d 94, 99 (2d Cir. 2015) (citing *Sprague v. Ticonic Nat'l Bank*, 307 U.S. 161, 168 (1939)).  "To determine whether an issue remains open for reconsideration on remand, the trial court should look to both the specific dictates of the remand order as well as the broader spirit of the mandate." *Ben Zvi*, 242 F.3d at 95 (internal quotation marks omitted).

Here, the Second Circuit concluded that "the Complaint pled sufficient facts to state a securities law violation." *Blanford*, 794 F.3d at 300.  As discussed above, the court considered alleged statements by Green Mountain that "business was booming" and that it was struggling to meet demand. *Id.* at 306.  Those statements were then considered in the context of allegedly-hidden inventory numbers, and the case was allowed to proceed.

Defendants argue that the Second Circuit's ruling did not address their current position, either explicitly or impliedly. It is true that the Court of Appeals did not address the question of sales projections explicitly, as it was not raised.  Indeed, counsel previously conceded that Defendants were *not* asserting a safe harbor for forward-looking statements.  Defendants cannot raise a contrary argument now.

Moreover, nothing in the Second Circuit's ruling suggests

that this Court may review such a claim when the pleadings, as a whole, were declared sufficient to survive a Rule 12 motion.  The issues addressed on appeal were whether Defendants "made 'misleading statements and omissions . . . of a material fact" and whether they "acted with the '[r]equired state of mind.'" *Blanford*, 794 F.3d at 305.  Defendants make similar claims here, arguing that there were no misleading statements prior to July 27, 2011, and thus no grounds upon which to infer scienter.  *See* ECF No. 257 at 14 ("There is simply no basis to draw a compelling inference of intent to defraud from statements before that date, given that the Company's actual growth exceeded the growth projections it communicated to investors in earlier months.").  The Second Circuit found that, contrary to Defendants' claims, the allegations in the Complaint were sufficient to support claims of both misrepresentations and scienter.  Under the mandate rule, this Court cannot revisit those conclusions.

## IV.  Defendants' Reply Arguments

In their reply memorandum, Defendants shift away from their emphasis on sales projections and argue instead that, contrary to Plaintiffs' allegations, Green Mountain informed investors as of July 27, 2011 that it was no longer constrained by its production capacity.  Defendants submit that, as a result of this disclosure, any claims of being misled about capacity constraints after July 27, 2011 must be dismissed.  *See Basic Inc. v.*

*Levinson*, 485 U.S. 224, 248 (1988) (holding that a presumption of reliance in a fraud-on-the-market case may be rebutted by proving that "the 'market makers' were privy to the truth").

Plaintiffs contest this shift on multiple grounds, asserting: (1) that novel arguments may not be raised for the first time in a reply, (2) that the Complaint, which must be accepted as true on a motion to dismiss, alleges that as of July 27, 2011, Green Mountain continued to mislead investors and claim that it was straining to meet demand when, in fact, there were large inventories, and (3) that a "truth-on-the-market" defense is fact-specific and thus not an appropriate basis for dismissal under Rule 12.

The Complaint discusses the July 27, 2011 conference call between Green Mountain and analysts in some detail. Defendant Blanford reportedly "continued to stress that GMCR was straining capacity to meet the unprecedented demand for its products." ECF No. 71 at 16. During the next call with analysts, on November 9, 2011, one analyst referenced the "previous commentary" [from July 27, 2011] as describing Green Mountain as still being "capacity constrained." *Id.* at 44. These allegations, which amount to Green Mountain *not* revealing in July 2011 that production was now able to meet true demand, are in conflict with Defendants' claims and must be accepted as true at the Rule 12 stage.

This sort of dispute about whether the "truth" was ever

revealed is perhaps why the Second Circuit has noted that "[t]he truth-on-the-market defense is intensely fact-specific and is rarely an appropriate basis for dismissing a § 10(b) complaint for failure to plead materiality." *Ganino v. Citizens Utilities Co.*, 228 F.3d 154, 167 (2d Cir. 2000); *cf. Provenz v. Miller*, 102 F.3d 1478, 1493 (9th Cir. 1996) (noting that summary judgment based on the "truth on the market" doctrine is appropriate only if defendants show that "no rational jury could find that the market was misled"). Accordingly, even if the Court were to accept the Defendants' new arguments in their reply memorandum, they are not entitled to partial dismissal of the Plaintiffs' claims.

## Conclusion

For the reasons set forth above, Defendants' motion for partial dismissal of the Complaint is **denied**.

DATED at Burlington, in the District of Vermont, this 21st day of July, 2017.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge