UNITED STATES DISTRICT COURT
DISTRICT OF VERMONT

| | |
|---|---|
| LOUISIANA MUNICIPAL POLICE EMPLOYEES' RETIREMENT SYSTEM, SJUNDE AP-FONDEN, BOARD OF TRUSTEES OF THE CITY OF FORT LAUDERDALE GENERAL EMPLOYEES' RETIREMENT SYSTEM, EMPLOYEES' RETIREMENT SYSTEM OF THE GOVERNMENT OF THE VIRGIN ISLANDS, AND PUBLIC EMPLOYEES' RETIREMENT SYSTEM OF MISSISSIPPI on behalf of themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>    v.<br><br>GREEN MOUNTAIN COFFEE ROASTERS, INC., LAWRENCE J. BLANFORD and FRANCES G. RATHKE,<br><br>          Defendants. | No. 2:11-CV-00289-WKS |

**MEMORANDUM IN SUPPORT OF CLASS REPRESENTATIVES'
UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

## **TABLE OF CONTENTS**

I. BACKGROUND ................................................................................................................ 2

II. CLAIMS ADMINISTRATION ....................................................................................... 3

    A. No Disputed Claims ............................................................................................ 4

    B. Late Claims – and Final Cut-Off Date ............................................................... 4

III. FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ........................................ 6

IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ............................... 7

    A. Distribution of the Net Settlement Fund ........................................................... 7

    B. Additional Distribution(s) of the Net Settlement Fund ................................... 8

V. RELEASE OF CLAIMS ................................................................................................. 10

VI. CONCLUSION ................................................................................................................ 10

Class Representatives Louisiana Municipal Police Employees' Retirement System, Sjunde AP-Fonden, Board of Trustees of the City of Fort Lauderdale General Employees' Retirement System, Employees' Retirement System of the Government of the Virgin Islands, and Public Employees' Retirement System of Mississippi (collectively, "Class Representatives"), respectfully move for entry of the proposed Order Approving Distribution Plan (the "Class Distribution Order"), which will approve the proposed plan for the distribution of the net proceeds of the Settlement to eligible Class Members in the above-captioned action (the "Action"). The Distribution Plan is included in the accompanying Declaration of Alexander Villanova in Support of Class Representatives' Unopposed Motion for Approval of Distribution Plan (the "Villanova Declaration" or "Villanova Decl."),[1] submitted on behalf of the Court-approved Claims Administrator, Epiq Class Action and Claims Solutions, Inc. ("Epiq").

If entered by the Court, the Class Distribution Order would, among other things, (i) approve Epiq's administrative recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by Epiq as valid and approved by the Court, while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; and (iii) approve Epiq's unpaid fees and expenses incurred and estimated to be incurred in the administration of the Settlement. Pursuant to the terms of the Stipulation, the motion is unopposed by Defendants.

There are no disputed Claims by any Class Member requiring Court review. As such, the motion is ripe for determination.

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Villanova Declaration or in the Stipulation and Agreement of Settlement dated June 18, 2018 (ECF No. 336-1) (the "Stipulation"). The Settlement is contained in the Stipulation.

I.   **BACKGROUND**

The Court has approved the Stipulation entered into by Class Representatives, on behalf of themselves and the other Class Members, and the Defendants in the Action. The Stipulation set forth the terms of the settlement (the "Settlement"), which represents a complete resolution of this Action in return for a payment of $36.5 million in cash, which Defendants have caused to be paid for the benefit of Class Members.

In accordance with the Order Preliminarily Approving Settlement and Providing for Notice (the "Preliminary Approval Order") entered by the Court, Epiq has mailed the Notice of (I) Pendency of Class Action and Class Certification; (II) Proposed Settlement; (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses; and (IV) Settlement Fairness Hearing (the "Notice") and the Proof of Claim and Release Form (the "Claim Form" or "Proof of Claim Form," and together with the Notice, the "Notice Packet") to potential Class Members, brokers, and other nominees. Villanova Decl. ¶ 2. As stated in the Villanova Declaration, Epiq has disseminated 189,911 Notice Packets to potential Class Members and nominees. *Id*. ¶ 4. The Notice informed Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim received or postmarked no later than December 1, 2018. *Id*. ¶ 7.

On October 22, 2018, the Court issued its Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 351) and its Judgment Approving Class Action Settlement (ECF No. 350) (the "Judgment"). The Effective Date of the Settlement has occurred. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. In accordance with paragraph 31

of the Stipulation, Class Representatives respectfully ask the Court to enter the Class Distribution Order approving the Distribution Plan.[2]

## II. CLAIMS ADMINISTRATION

As detailed in the accompanying Villanova Declaration, through October 31, 2019, Epiq received and processed 25,115 Claims. Villanova Decl. ¶ 7. All Claims received through October 31, 2019, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*id*.), and Epiq has worked with Claimants to help them perfect their Claims (*see id*. ¶¶ 19-26).

As discussed in the Villanova Declaration, many of the Claims submitted in the Settlement were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by Epiq. *Id*. ¶¶ 19, 22.

If Epiq determined a Claim to be defective or ineligible, a letter (if the Claimant filed a paper Claim), or an email (if the Claimant filed an electronic Claim), was sent by Epiq to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and what was necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within 20 days from the date of the letter, or Epiq would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A and B to the Villanova Declaration.

---

[2] The Court retained continuing and exclusive jurisdiction over, among other things, implementing the Settlement, including the disposition of the Settlement Fund and any motion to approve the Class Distribution Order. *See* Judgment ¶ 14.

3

### A.   No Disputed Claims

Epiq carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. Villanova Decl. ¶¶ 21, 26. Consistent with paragraph 29(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer that he, she, or it had the right, within 20 days after the mailing or e-mailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of Epiq's administrative determination of the Claim. Villanova Decl. ¶¶ 20, 23 and Exhibits A and B.

With respect to the fully-processed Claims, Epiq received 10 requests for a review by the Court of its administrative determinations. *Id*. ¶ 28. To resolve the disputes without necessitating the Court's intervention, Epiq contacted all persons requesting Court review and attempted to answer all questions, fully explain Epiq's determination of the Claim's status, and facilitate the submission of missing information or documentation where applicable. *Id*. As a result of these efforts, all Claims for which Court review had been requested have either been cured or the Claimant withdrew the request for Court review. *Id*.

As shown in the Villanova Declaration, of the 25,115 Claims that are the subject of this motion, Epiq has determined that 11,047 are acceptable in whole or in part, and that 14,068 should be wholly rejected because they are ineligible for payment from the Net Settlement Fund. Villanova Decl. ¶¶ 33-36. Class Representatives respectfully request that the Court approve Epiq's administrative determinations accepting and rejecting Claims as stated in the Villanova Declaration.

### B.   Late Claims – and Final Cut-Off Date

The 25,115 Claims received through October 31, 2019, include 4,065 that were postmarked or received after the Court-approved Claim submission deadline of December 1, 2018, but were received before October 31, 2019. Villanova Decl. ¶¶ 29, 35. Those late Claims

have been fully processed, and 1,830 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id*. Although these 1,830 Claims were late, they were received while the processing of timely Claims was ongoing. Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the Claims administration process or the distribution of the Net Settlement Fund. The Court has discretion to accept Claims received after the submission deadline.[3] Class Representatives respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline, if it was submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Class Representatives respectfully request that this Court order that any new Claims and any adjustments to previously-filed Claims that would result in an increased Recognized Claim amount received after October 31, 2019, be barred, subject to the provisions of paragraph 39(f) of the Villanova Declaration.[4] Paragraph 39(f) applies to any Claims received or modified after October 31, 2019, that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if timely received. At the time when Class Counsel, in consultation with Epiq, determine that a further distribution is not cost-effective as provided in

---

[3] *See* Preliminary Approval Order ¶ 8 (*"Unless the Court orders otherwise*, all Claim Forms must be postmarked no later than one hundred twenty (120) calendar days after the Notice Date. Notwithstanding the foregoing, Class Counsel may, at their discretion, accept for processing late Claims provided such acceptance does not delay the distribution of the Net Settlement Fund to the Class.") (emphasis added).

[4] Should an adjustment be received that results in a lower Recognized Claim amount, that adjustment will be made, and the Recognized Claim amount will be reduced accordingly prior to a distribution to that Claimant. Villanova Decl. ¶ 30.

paragraph 39(e) of the Villanova Declaration, the post-October 31, 2019 Claimants (after payment of fees and expenses as provided in paragraph 39(f) of the Villanova Declaration, at the discretion of Class Counsel and to the extent possible) may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

### III.  FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with Epiq's agreement with Class Counsel to act as the Claims Administrator for the Settlement, Epiq was responsible for, among other things, disseminating notice of the Settlement to the Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Villanova Decl. ¶¶ 2, 3. As stated in the accompanying Villanova Declaration, Epiq's fees and expenses for its work performed through October 31, 2019, are $426,547.73 and estimated to be performed on behalf of the Class in connection with the Initial Distribution are $16,232.80, which together total $442,780.53.[5] Villanova Decl. ¶ 38. To date, Epiq has received payment in the amount of $236,544.12 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $206,236.41 payable to Epiq, which amount includes the estimated fees and expenses to be incurred by Epiq in connection with the Initial Distribution. *Id*. Class Counsel reviewed Epiq's invoices and respectfully request on behalf of Class Representatives that the Court approve all of Epiq's fees and expenses.

---

[5] Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund and will be available for subsequent distribution to Authorized Claimants. Villanova Decl. ¶ 38 n.2.

## IV. DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

The Net Settlement Fund is ready to be distributed. Class Representatives respectfully move the Court for entry of an order approving Epiq's determinations concerning acceptance and rejection of the Claims that are included in the present motion and approving the proposed Distribution Plan as stated in the Villanova Declaration.[6]

### A. Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, Epiq will distribute approximately 95% of the Net Settlement Fund, after deducting all payments previously allowed and the payments approved by the Court on this motion, and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the "Initial Distribution"). In the Initial Distribution, Epiq will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. Epiq will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *See* Villanova Decl. ¶ 39(a)(1). In accordance with the Court-approved Plan of Allocation, Epiq will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by Epiq. *Id*. ¶ 39(a)(2). Epiq will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more (the "Distribution Amount"). *Id*. ¶ 39(a)(3). 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to

---

[6] Under the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net Settlement Fund. *See* Stipulation ¶¶ 22, 28.

$10.00 or more under subparagraph 39(a)(4) of the Villanova Declaration. The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. To the extent the Reserve is not depleted, the remainder will be distributed in the "Second Distribution" described in subparagraph 39(d) of the Villanova Declaration. *Id.* ¶ 39(a)(4).

In order to encourage Authorized Claimants to promptly cash their checks, Class Representatives propose that the distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id.* ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions stated in paragraph 39(b) footnote 3 of the Villanova Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to all of these stale-dated checks will be available to be redistributed to other Authorized Claimants in any subsequent distribution, as described below. *Id.* ¶ 39(c).

**B.     Additional Distribution(s) of the Net Settlement Fund**

After Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than nine (9) months after the Initial Distribution, Epiq will, after consulting with Class Counsel, conduct a second distribution of the Net Settlement Fund (the "Second Distribution"). In the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution (including from the Reserve and the funds for all void stale-dated checks), after deducting Epiq's fees and expenses incurred in connection with administering the Settlement for which it has not yet been paid (including the estimated costs of the Second Distribution), and after deducting payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be distributed to all Authorized Claimants in the Initial Distribution who cashed their Initial Distribution checks and

8

would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. Villanova Decl. ¶ 39(d). If, after the Second Distribution, any funds remain in the Net Settlement Fund because of uncashed checks or otherwise, then after Epiq has made reasonable and diligent efforts to have Authorized Claimants cash their distribution checks, and if cost-effective, subsequent distributions of the funds remaining in the Net Settlement Fund, after deduction of costs and expenses as described above and subject to the same conditions, will take place at six-month intervals thereafter. *Id*. When Class Counsel, in consultation with Epiq, determine that further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after October 31, 2019, Epiq will process those Claims. Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an adjustment was received after October 31, 2019, which resulted in an increased Recognized Claim, may be paid in accordance with paragraph 39(f) of the Villanova Declaration. Villanova Decl. ¶ 39(e). If any funds remain in the Net Settlement Fund after payment of these late or late-adjusted Claims, the remaining balance of the Net Settlement Fund, after payment of any unpaid fees or expenses incurred in administering the Net Settlement Fund and after the payment of any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees, will be contributed to Vermont Legal Aid, a non-sectarian, not-for-profit 501(c)(3) organization established in 1968 to provide civil legal services to indigent persons. *Id*. Vermont Legal Aid provides civil legal services for those living in poverty, with a disability, over age 60, or anyone discriminated against in housing decisions or facing challenges related to health care insurance or services. *See* https://www.vtlegalaid.org/about-us. Class action settlements in Vermont state court require that "at least fifty percent of the residual funds shall be disbursed to Vermont Legal

Aid to support direct delivery of legal services to indigent persons….” Vt. R. Civ. P. 23(g)(2)(A).

## V.  RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. Accordingly, Class Representatives respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Class Members and other Claimants, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Class Representatives, Class Counsel, the Claims Administrator, the Escrow Agent, or any other agent retained by Class Representatives or Class Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

## VI.  CONCLUSION

For the foregoing reasons, Class Representatives respectfully submit that Class Representatives' Unopposed Motion for Approval of Distribution Plan should be granted, and

the [Proposed] Order Approving Distribution Plan should be entered.

Dated: January 14, 2020

Respectfully submitted,

*/s/ John C. Browne*
**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**
John C. Browne
Rebecca E. Boon
Julia K. Tebor
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Matthew L. Mustokoff
Joshua D'Ancona
Joshua A. Materese
Nathan Hasiuk
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

**BARRACK, RODOS & BACINE**
Mark R. Rosen
Jeffrey A. Barrack
3300 Two Commerce Square
2001 Market Street, Ste. 3300
Philadelphia, PA 19103
Telephone: (215) 963-0600
Facsimile: (215) 963-0838

*Attorneys for Class Representatives*
*and the Class*

**LYNN, LYNN, BLACKMAN & MANITSKY, P.C.**
Andrew D. Manitsky
76 St. Paul Street, Suite 400
Burlington, VT 05401
Telephone: (802) 860-1500
Facsimile: (802) 860-1580

*Liaison Counsel for Class Representatives*
*and the Class*